IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Claire M. Mensack, ) | |
| ) | |
| Plaintiff, ) | C.A. No. 3:16-723-CMC-KDW |
| ) | |
| v. ) | Report and Recommendation |
| ) | (Regarding Partial Motion to Dismiss) |
| South Carolina Department of Mental ) | |
| Health and John H. Magill, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Plaintiff Claire Mensack ("Mensack" or "Plaintiff"), filed this action against her former employer, the South Carolina Department of Mental Health ("SCDMH" or "Department"), asserting claims under Title VII of the Civil Rights Act ("Title VII"); the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. §§ 12101, *et seq*; the South Carolina Human Affairs Law ("SCHAL"), S.C. Code §§ 1-13-80, 1-13-85; and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, with a claim of wrongful discharge in violation of public policy in violation of South Carolina common law brought in the alternative to the FLSA claim. Plaintiff also brings a claim pursuant to 42 U.S.C. § 1983 against SCDMH Director John H. Magill. Compl., ECF No. 1-1. Plaintiff filed this action in the South Carolina Court of Common Pleas for Richland County; Defendants removed it to this court on March 7, 2016. In response to Plaintiff's Complaint, Defendants filed an Answer, ECF No. 7, as well as a Motion for Partial Dismissal, ECF No. 6, in which they seek dismissal of all claims other than those brought under Title VII.

This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation ("Report") on Defendants' Motion to Dismiss. Plaintiff filed a responsive memorandum, ECF No. 12, to which Defendants filed a Reply,

ECF No. 13. Having reviewed the parties' submissions and the applicable law, the undersigned recommends that Defendants' Motion for Partial Dismissal, ECF No. 6, be *granted*.

I.    Background

Plaintiff, a white female, worked at SCDMH as a Human Services Coordinator II from August 2014 until her November 19, 2014 termination. Compl. ¶ 7. Plaintiff worked at the Department's Bryan Psychiatric Hospital and was supervised by Program Manager Patricia Gunn ("Gunn"), an African-American female. *Id.* ¶ 8. Plaintiff also worked part-time at Bath & Body Works in Columbia, SC while employed by SCDMH. *Id.* ¶ 9. On October 23, 2014, Plaintiff was injured while working at Bath & Body Works. *Id.* ¶ 10. Plaintiff saw a doctor around October 26, 2014, and emailed Gunn to advise her that she (Plaintiff) needed to take two days of sick leave for her sprained ribs. *Id. ¶* 10.

Around this same time (on October 24, 2014), Plaintiff indicates she communicated with Gunn regarding attendance at a Suicide Prevention Walk that was planned for Sunday, October 26, 2014. Compl. ¶ 47. Gunn advised Plaintiff they would not be attending the Walk, but that Plaintiff could go into work for a couple of hours that Sunday. *Id.* Plaintiff inquired of Gunn whether she would receive compensation ("comp. time") for the Sunday hours worked. Gunn informed Plaintiff she could not use comp. time and noted Plaintiff "owed the state 2.5 hours per week since she worked 37.5 hours instead of 40 hours each week." Gunn told Plaintiff she would need to think about how Plaintiff could make those hours up. *Id.* Plaintiff alleges she responded by telling Gunn she was told at hiring that her regular work week consisted of 37.5 hours and that she would receive comp. time if she was required to attend weekend events. *Id.* ¶ 48.

After seeing a doctor on October 26, 2014, Plaintiff returned to work on October 29, 2014, but was in severe pain. Plaintiff advised Gunn of this and scheduled another doctor's appointment. *Id.* ¶ 11. After a visit to the emergency room on October 31, 2014, Plaintiff learned she had multiple

2

rib fractures. Plaintiff advised Gunn of this diagnosis and noted the doctor had advised that she not return to work until November 5, 2014. *Id.* ¶ 12. When Plaintiff realized the doctor's note indicated she could return to work on November 4, 2014, Plaintiff returned to work on that date, which was an election day. *Id.* ¶ 13. Not finding Gunn in her office, Plaintiff left the doctor's note on Gunn's desk, as well as a slip indicating she was taking 1.5 of the 2 hours of leave that were given to employees for voting purposes. *Id.* Late on the night of November 4, 2014, Plaintiff learned of a voicemail message Gunn had left her advising that Plaintiff needed to provide a doctor's note verifying she was fit for duty. *Id.* ¶ 14. Within the next several days Plaintiff had several meetings with Gunn and representatives of the SCDHM human resources ("HR") department regarding her medical documentation and fitness to work. *Id.* ¶¶ 17–19. After further meetings discussing medical documentation as well as leave issues, SCDMH terminated Plaintiff's employment on November 19, 2014 for insubordination. *Id.* ¶ 22.

II.     Standard of Review

Defendants move to dismiss Plaintiff's ADA and FLSA claims against the Department and the § 1983 claim against Magill for lack of jurisdiction pursuant to Rule 12(b)(1). As federal courts are courts of limited jurisdiction, there is no presumption that the court has jurisdiction. *See Pinkley, Inc. v. City of Fredrick, Md.,* 191 F.3d 394, 399 (4th Cir. 1999). Typically, the burden of proving subject-matter jurisdiction is on the plaintiff, the party asserting jurisdiction. *See Richmond, Fredericksburg & Potomac R.R. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). As set out by Defendants, "where a party challenges the subject matter jurisdiction of the court on the grounds that the party is an arm of the state entitled to sovereign immunity, the burden of persuasion lies with the party asserting the immunity." *Hutto v. S.C. Ret. Sys.,* 899 F. Supp. 2d 457, 466 (D.S.C. 2012) (citing *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.,* 466 F.3d 232, 237 (2d Cir. 2006)).

3

The remainder of Defendants' Motion seeks dismissal pursuant to Rule 12(b)(6). A motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support his claim and would entitle him to relief. Fed. R. Civ. P. 12(b)(6). "A motion filed under Rule 12(b)(6) challenges the legal sufficiency of a complaint." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). When considering this motion, the court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). The court is also to "'draw all reasonable inferences in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (quoting *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009)). Although a court must accept all *facts* alleged in the complaint as true, this is inapplicable to legal conclusions, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citation omitted).

III.    Analysis

    A.    Eleventh Amendment Immunity as to ADA and FLSA causes of action (SCDMH)

Plaintiff's third cause of action is one for disability discrimination under the ADA and SCHAL. Her final claim is one in the "alternative," in which she pursues an FLSA retaliation claim or one for state-law wrongful termination in violation of public policy. Compl. ¶¶ 33-39, 45-51. SCDMH claims the Eleventh Amendment to the U.S. Constitution bars Plaintiff's causes of action brought pursuant to the ADA and the FLSA.[1] Plaintiff acknowledges in her Complaint that SCDMH is a "subdivision of the State of South Carolina." Compl. ¶ 2. The Eleventh Amendment provides immunity to nonconsenting states and their agencies from suits by private citizens in federal court. *See Regents of the Univ. of Calif. v. Doe*, 519 U.S. 425, 429 (1997). Only if Congress has

---

[1] Defendants' challenges to Plaintiff's state law claims are discussed below.

4

appropriately abrogated that immunity does federal jurisdiction exist as to suits against such states and state entities. *See Bd. of Trustees of the Univ. of Al. v. Garrett*, 531 U.S. 356, 363 (2001) ("Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and 'act[s] pursuant to a valid grant of constitutional authority.'") (quoting *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 72-73 (2000)).

In opposing this portion of Defendants' Motion to Dismiss, Plaintiff argues SCDMH "implicitly waiv[ed]" sovereign immunity by removing this matter from state to federal court. Pl.'s Mem. 2 (citing no authority). In response, SCDMH cites an opinion of the Fourth Circuit Court of Appeals ("Fourth Circuit") and several rulings in this District that found removal of a matter did not amount to a waiver of such immunity in most instances. Defs.' Reply 1-2 (citing *Stewart v. North Carolina*, 393 F.3d 484, 488 (4th Cir. 2005) and several other cases).

The undersigned agrees with SCDMH that its removal of the Complaint did not effect an immunity waiver. Under certain circumstances—such as when a state removes a matter to federal court for which that state *had* waived immunity in its own state courts—removal to federal court may be considered a waiver of immunity. *See Lapides v. Bd. of Regents,* 535 U.S. 613, 617 (2002) (finding Georgia's removal of action had waived Eleventh Amendment immunity in matter as to which the state had expressly consented to suit in her own state courts). The *Stewart* court, however, pointed out the specificity of the *Lapides* holding, noting *Lapides* had not addressed the waiver argument when the removed matter included claims as to which the state had *not* consented to suit in her own courts. *Stewart*, 393 F.3d at 488-89. In other words, *Lapides* prevented a state litigant from regaining immunity it had expressly waived. The *Stewart* court found North Carolina's removal of a matter as to which the state had not waived immunity was not a waiver of its Eleventh Amendment immunity. *Id.* at 489.

5

Similarly, SCDMH had the right to remove this action, as it includes several federal claims, and South Carolina has not consented to suit in state court for these claims. The undersigned recommends a finding that Defendants' removal did not operate as a waiver, and this court appropriately considers SCDMH's claims of Eleventh Amendment immunity to the ADA and FLSA claims. *See Stewart*, 393 F.3d at 489; *see also Ramos v. Berkeley Cnty.*, No. C/A 2:11-3379-SB-BM, 2012 WL 5292899, at *3 (D.S.C. Aug. 7, 2012), *report and recommendation adopted,* No. C/A 2:11-3379-SB, 2012 WL 5292895 (D.S.C. Oct. 25, 2012) (finding removal of ADA claims did not effect waiver of the State's immunity from suit for these claims); *Martin v. S. C. Dep't of Corr.*, No. 2:09-01347-CWH, 2009 WL 4363216, at *3 (D.S.C. Dec. 1, 2009) (finding removal of matter that included FLSA claim did not waive immunity).

SCDMH submits that, as a state agency, it cannot be sued for claims brought under the ADA based on the Supreme Court's decision in *Garrett*, 531 U.S. 356. In *Garrett* the Court held that Congress had not validly abrogated Eleventh Amendment immunity in the passage of the ADA. Defs.' Mem. 4-5. Several years earlier, the Court found that Eleventh Amendment immunity had not been validly abrogated in the FSLA. *Alden v. Maine*, 527 U.S. 706, 712-13 (1999). In addition to the waiver argument discussed above, Plaintiff effectively concedes that *Garrett* and *Alden* may require that sovereign immunity apply to her ADA and FLSA claims. Pl.'s Mem. 2.

Nonetheless, Plaintiff then submits she "still should be able to pursue the claim for non-monetary relief[.]" Pl.'s Mem. 2 (noting her Complaint seeks "remedial and equitable damages" for ADA violation). However, Plaintiff proffers nothing more to explain or support her argument. *See id.* Plaintiff's quasi-argument could be dismissed out of hand for failure to provide legal argument or even citations to supportive case law or other legal authority. In any event SCDMH provides case law holding that Eleventh Amendment immunity applies to states and their agencies regardless of the type of relief sought. Reply 2 (citing several cases, including *Alabama v. Pugh*, 438 U.S. 781,

6

781-82 (1978), for proposition that "the Eleventh Amendment protects the state agency from suit whether monetary damages or injunctive relief is sought."). The undersigned agrees with SCDMH and recommends Plaintiff's ADA and FLMA causes of action be dismissed on Eleventh-Amendment-immunity grounds.

B.      Immunity from 42 U.S.C. § 1983 cause of action (Magill)

Plaintiff alleges a violation of 42 U.S.C. § 1983 against SCDMH Director Magill, claiming violation of her 14th Amendment rights as follows:

> Under color of state law and authority, Defendant Magill, the Director of the Defendant Department and his predecessor directors, oversaw, authorized, and caused a regime of disparate treatment based upon disability and/or perceived disability towards the Plaintiff.

Compl. ¶ 41. Plaintiff does not set out any other allegations as to Defendant Magill.

Magill first seeks to dismiss this claim because he is not considered a "person" for § 1983 purposes. Defs.' Mem. 5-6. Section 1983 provides in part that "[e]very person who, under color of any statute, ordinance, custom, or usage, of any State" may be liable to individuals for violation of constitutional rights. In *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989), the Supreme Court held that neither States themselves nor "officials acting in their official capacities are 'persons' under § 1983."

Further, Magill argues the claim concerns only alleged actions taken in his official capacity, Defs.' Mem. 5-6 (citing paragraph 41 of the Complaint noting the only allegation against Magill is against him and his "predecessor directors" who allegedly "oversaw, authorized, and caused a regime of disparate treatment . . ."). Nothing in the Complaint alleges Magill had any direct involvement with Plaintiff or made any employment decisions concerning her. Magill argues that Plaintiff's claim, which is brought against Magill and his predecessor directors, would actually be a suit against the State of South Carolina, and such a claim would be barred by the Eleventh Amendment. Defs.' Mem. 5-6 (citing *Pennhurst St. Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101

(1984)). The "Eleventh Amendment bars a suit against state officials when 'the state is the real, substantial party in interest." 465 US at 101 (internal quotation and citation omitted). Magill argues the only allegedly unlawful actions proscribed to him relate to matters that are inextricably tied to his official duties.

In response, Plaintiff does not contest that no § 1983 claims can brought against Magill in his *official* capacity. Nonetheless, Plaintiff argues the § 1983 claim should not be dismissed at this juncture. Pl.'s Mem. 2-3. She submits dismissal would be "premature" as "discovery is needed regarding Director Magill's actions" that allegedly "perpetrated a 'regime of disparate treatment[.]'" Pl.'s Mem. 3 (quoting Compl. ¶ 41). Plaintiff cites no authority to support this argument, nor does she point to any other part of the Complaint concerning actions allegedly taken by Magill. This is likely so because the Complaint contains *no* allegations to support any sort of suit against Magill individually. Indeed, paragraph 41's allegations are directed toward Magill and his unnamed predecessors. Even if Plaintiff could demonstrate a "regime" of discrimination by Magill and his predecessors, almost by definition, such "regimental" actions would take place in the context of the directors' official duties.

Plaintiff's one-sentence argument that discovery is necessary to determine information about Magill's actions and whether they "perpetrated a regime of disparate treatment" does not come close to meeting pleading standards. Presumably, Plaintiff is suggesting discovery could provide her with evidence to permit an individual-capacity claim against Magill. However, to progress to the discovery phase, Plaintiff's Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[2] This plausibility standard requires a plaintiff to

---

[2] *Iqbal* concerned a Rule 12(b)(6) motion. While this portion of Defendants' motion is brought pursuant to Rule 12(b)(1), this ruling arguably turns on the sufficiency of Plaintiff's claims, making *Iqbal* and other pleadings cases relevant to this analysis.

demonstrate more than "a sheer possibility that a defendant has acted unlawfully." *Id.* This standard "requires the plaintiff to articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief[.]" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557). A pleading that merely offers "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do," *Twombly*, 550 U.S. at 555, nor will a complaint that tenders "'naked assertion[s]' devoid of 'further factual enhancements'" satisfy pleading requirements. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

Here, Plaintiff's Complaint does not even contain "labels and conclusions" or the most basic of facts needed to plead a § 1983 claim against Magill in his individual capacity. The claim against Magill should be dismissed. Plaintiff makes no mention of another avenue of recovery against Magill, nor does the undersigned find any other theory could pass Rule 12 muster. Respondeat superior is unavailable in § 1983 actions. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978). Further, neither Plaintiff's Complaint nor her responsive memorandum discusses a claim of supervisory liability. To the extent she purports to be raising such a claim, her Complaint falls far short of pleading facts sufficient to support such a claim. *Cf. Shaw v. Stroud*, 13 F. 3d 791, 799 (4th Cir. 1994) (finding a § 1983 plaintiff must show the supervisor had actual or constructive knowledge of a subordinate's behavior that posed a "pervasive and unreasonable risk" of constitutional injury, the supervisor's response to such knowledge was so inadequate that it showed "deliberate indifference to or tacit authorization of" such practices, and there was a causal link between the supervisor's inaction and the plaintiff's constitutional injury). Nothing in her Complaint even suggests Plaintiff could show constitutional injury of which Magill was aware but indifferent. Magill should be dismissed.

9

Plaintiff also briefly argues her § 1983 claim against Magill should not be dismissed "to the extent Plaintiff seeks prospective injunctive relief such as an Order precluding the discriminatory treatment towards employees." Pl.'s Mem. 3 (citing *Ex Parte Young*, 209 U.S. 123 (1908)). Plaintiff points to paragraph 44 of her Complaint, noting her § 1983 claim includes a request for "appropriate equitable relief" and the "Prayer for Relief" section of the Complaint, which seeks "equitable relief." While *Ex Parte Young* excepts certain equitable claims from Eleventh Amendment immunity, that exception in no way covers any and all claims for "equitable relief." As the Fourth Circuit recently noted,

> The *Ex parte Young* exception to Eleventh Amendment immunity applies only where a party "defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional" has "some connection with the enforcement of the act."

*Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 550 (4th Cir. 2014) (quoting *Ex Parte Young*, 209 U.S. at 157). Here, Plaintiff simply has not pleaded any act that is being enforced by anyone that allegedly infringes on Plaintiff's rights. As discussed more fully above, she has not pleaded a plausible claim of any "regime of disparate treatment." Further, her Complaint cannot be read to link any actions or inactions of Magill to any alleged constitutional violation.

The undersigned recommends a finding that Plaintiff's § 1983 claim against Magill be dismissed based on his Eleventh Amendment-immunity challenge.

Magill alternatively argues that qualified immunity protects him from Plaintiff's claims. Defs.' Mem. 6-7. Qualified immunity protects government officials performing discretionary functions from civil damage suits when they do not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In considering qualified immunity, the court must determine whether Plaintiff has set out sufficient allegations to show Magill violated a clearly established constitutional right. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

In response, Plaintiff again suggests it would be "premature" to dismiss the claim against Magill based on qualified immunity. Pl.'s Mem. 3. She again points to her averment that Magill and his unnamed predecessors effected a "regime of discrimination based on disability and violated the Plaintiff's right to equal protection." *Id.* Again, Plaintiff simply has not pleaded sufficient allegations indicating Magill engaged in any conduct concerning Plaintiff, much less conduct that arguably violated her constitutional right to equal protection. In addition, as pointed out by Magill, his qualified-immunity challenge is not "premature," as such challenges are most often considered at the motion-to-dismiss stage. *See Jenkins v. Medford*, 119 F.3d 1156, 1159 (4th Cir. 1997). Dismissal based on Magill's qualified immunity would also be appropriate.

Plaintiff's § 1983 cause of action should be dismissed. As it is the only claim brought against Magill, he should be dismissed from this case.

C.     Untimeliness of Plaintiff's SCHAL claims

Plaintiff's first and second causes of action are brought both under Title VII and SCHAL. Her third cause of action is brought under the ADA and SCHAL. Compl. ¶¶ 23–39. Defendants assert the SCHAL claims should be dismissed because they are untimely. SCHAL requires that an "action [] be brought within one year from the date of the violation alleged, or within one hundred twenty days from the date the complainant's charge is dismissed, *whichever occurs earlier.*" S.C. Code Ann. § 1-13-90(d)(6) (emphasis added). The Complaint alleges that SCDMH terminated Plaintiff on November 19, 2014. Compl. ¶ 22. Plaintiff filed the Complaint on February 3, 2016, over a year after her termination. Accordingly, Defendants seek dismissal of Plaintiff's SCHAL claims as untimely. Defs.' Mem. 7.

In response, Plaintiff does not question SCHAL's one-year limitations period, but submits that period should be tolled. Plaintiff asserts it would be inequitable for her "to be required to adhere to the administrative process yet also have a statute of limitation that may expire prior to

11

exhausting her remedies through that process." Pl.'s Mem. 3-4. Plaintiff offers no additional argument or citation to any authority to support her equitable-tolling argument.

The undersigned notes that South Carolina courts recognize two equity-based theories that may be used to defeat an otherwise-proper statute-of-limitations defense: equitable tolling and equitable estoppel. *See Magnolia N. Prop. Owners' Ass'n, Inc. v. Heritage Cmtys., Inc.*, 725 S.E.2d 112, 124-26 (S.C. Ct. App. 2012). The judicially created doctrine of equitable tolling "stems from the judiciary's inherent power to formulate rules of procedure where justice demands it [and may be invoked to] "suspend or extend the statutory period to ensure fundamental practicality and fairness." *Hooper v. Ebenezer Sr. Servs. & Rehab. Ctr.*, 687 S.E.2d 29, 32-33 (S.C. 2009) (internal citation omitted). Courts should use the doctrine "sparingly and only when the interests of justice compel its use." *Id.* Equitable estoppel calls on the court's equitable powers to estop a defendant from prevailing on a statute-of-limitations defense when to do so would be inequitable based on the course of conduct between the parties or by the deceit or misrepresentation of a defendant. *See Magnolia*, 725 S.E.2d at 125-26. As Plaintiff does not claim that Defendants' actions are the reason she seeks tolling, the court looks to whether equitable tolling (as opposed to equitable estoppel) might apply.

Plaintiff, as the party seeking equitable tolling "bears the burden of establishing sufficient facts to justify its use." *Hooper*, 687 S.E.2d at 32. Plaintiff's generally bemoaning that she should not be required to adhere to the one-year statute while also exhausting administrative remedies is far from sufficient to satisfy her burden of establishing entitlement to tolling. Plaintiff offers no facts on which to base her equitable argument. The undersigned is of the opinion this is not a situation in which the court should exercise its equitable powers to toll the South Carolina limitations period. *See also Brown v. Lexington Cnty. Health Servs. Dist., Inc.*, No. CA 3:12-2674-MBS-PJG, 2013 WL 5467623, at *5 (D.S.C. July 11, 2013), *report and recommendation adopted,* No. CA 3:12-

12

02674-MBS, 2013 WL 5467626 (D.S.C. Sept. 27, 2013) (declining plaintiff's request for equitable tolling of the SCHAL one-year limitations period based on plaintiff's argument that she reasonably waited for the EEOC's right-to-sue letter prior to filing suit).

>   D.   Plaintiff's public policy wrongful discharge claim

Plaintiff's "fifth and sixth" causes of action are grouped together in the Complaint, styled "FOR FIFTH AND SIXTH CAUSES OF ACTION AGAINST THE DEFENDANT SCDMH (Retaliation OR Public Policy Discharge)." Compl. at p. 9; *see* Compl. ¶¶ 45-51. Plaintiff avers that, shortly after inquiring about comp. time, Gunn "began harassing the Plaintiff and making conflicting and unreasonable demands, and she ultimately terminated the Plaintiff without justification less than a month after the complaint regarding compensatory time." Compl. ¶ 49. In addition to alleging this conduct amounted to FLSA retaliation, Plaintiff avers in relevant part:

> Alternatively, the Defendant[']s retaliatory actions for the complaint regarding compensatory time give rise to a claim of Public Policy Discharge under South Carolina common law. The South Carolina Payment of Wages Act, S.C. Code Ann. § 41-10-10 *et seq.*, [SCPWA] requires employers to compensate employees for any wages owned including compensatory time, thus the Plaintiff's termination for complaining of being paid for time worked is a violation of the public policy of South Carolina and the Defendant is liable for damages caused to the Plaintiff.

Compl. ¶ 51.

As discussed above, the undersigned recommends dismissing the FLSA claim on Eleventh-Amendment grounds. SCDMH seeks Rule 12(b)(6) dismissal of Plaintiff's alternative state law claim for wrongful discharge in violation of public policy ("public policy discharge claim"). Defs.' Mem. 7-10. SCDMH acknowledges that South Carolina law recognizes a narrow exception to the employment-at-will doctrine such that an at-will employee cannot be terminated in retaliation when such termination violates a "clear mandate of public policy." Defs.' Mem. 7-8 (quoting *Barron v. Labor Finders of S.C.*, 713 S.E.2d 634, 636 (S.C. 2011)). However, SCDMH argues, *inter alia*, that Plaintiff has not set out facts sufficient to plead a plausible claim for public policy discharge.

South Carolina's courts have recognized two clear situations in which the public policy exception applies: (1) where the employer requires the employee to violate the law; or (2) where the termination itself is a violation of the criminal law. *See Barron*, 713 S.E.2d at 637. The public-policy exception is not limited to these two situations, however. *Id.* The "determination of what constitutes public policy is a question of law for the courts to decide." *Barron,* 713 S.E.2d at 638; *see Desmarais v. Sci. Research Corp.*, No. 2:15-CV-00634-DCN, 2015 WL 6725672, at *3 (D.S.C. Nov. 3, 2015) (citing *Barron* and determining at summary-judgment stage that the plaintiff had not set out a "clear mandate of public policy"). Courts are to "exercise restraint when undertaking the amorphous inquiry of what constitutes public policy." *Taghivand v. Rite Aid Corp.*, 768 S.E.2d 385, 387 (S.C. 2015).

Here, Plaintiff does not argue she was required to violate the law or that her termination violated any criminal law. Rather, Plaintiff looks to the SCPWA as supplying South Carolina's public policy that an employee be compensated for wages owed and establishing a tort claim for her "termination for complaining of being paid for time worked[.]" Compl. ¶ 51. SCDMH argues, however, that Plaintiff has not alleged that SCDMH actually violated the SCPWA by failing to pay her for time worked nor has she indicated the SCPWA was ever actually implicated because there is no allegation that Plaintiff ever sought review of her comp.-time inquiry/claim with the South Carolina Department of Labor, Licensing, and Regulation ("LLR") as contemplated by the SCPWA. Defs.' Mem. 10 (citing *Barron*, 713 S.E. 2d at 638). Plaintiff never responds to this portion of SCDMH's argument. Nowhere does she allege she ever made any report to LLR concerning her alleged issue with being paid comp. time. Rather, Plaintiff simply submits she has sufficiently pleaded facts in that she complained to her supervisor about not being paid comp. time. Plaintiff notes the SCPWA does not provide a remedy for retaliation associated with nonpayment of wages, making this an appropriate public policy wrongful discharge claim. Pl.'s Mem. 4.

In *Barron*, the Supreme Court of South Carolina examined similar circumstances. The court agreed with the plaintiff that, while the SCPWA provides a statutory remedy for recovering unpaid wages, it does not include a remedy for wrongful termination damages. *Barron*, 713 S.E.2d at 638. Accordingly, the court noted the lack of a wrongful termination remedy meant a public-policy termination claim was not automatically precluded. Nonetheless, the court found the wrongful-termination claim should be dismissed because—as here—there was no evidence the SCPWA was ever implicated. The pleadings and record did not indicate Barron had filed a complaint with LLR or that she had advised her employer that she planned to do so. Rather, Barron made only an internal request that her wages be corrected. *Id.*; *see also Riley v. S. Care, Inc.*, No. 3:13-CV-00357-CMC, 2013 WL 1809788, at *5-6 (D.S.C. Apr. 29, 2013) (looking to *Barron* and granting dismissal of public policy termination claim because the plaintiff had made only internal reports concerning alleged abuse of a vulnerable adult and had not made a report to the Adult Protective Services Program as contemplated by the statute on which her public-policy argument was hinged).

Here, the only source of public policy to which Plaintiff refers is the SCPWA. As in *Barron*, Plaintiff's claim for wrongful termination in violation of public policy should be dismissed as there is no evidence that the SCPWA was implicated. This is so even if the SCPWA itself is considered to evince a clear public-policy mandate in favor of paying employees all wages due and owing to them. Plaintiff's claim for wrongful termination in violation of public policy should be dismissed as a matter of law.

Based upon this recommendation, the undersigned does not address in detail SCDMH's argument that the public-policy wrongful-discharge claim should be dismissed because Plaintiff may have other adequate statutory remedies. *See* Defs.' Mem. 8 (correctly citing general law for the proposition that the public policy exception to at-will employment is inapplicable when the employee "has an existing statutory remedy for wrongful termination." (citing *Barron*, 713 S.E.2d

15

at 636)). In support, SCDMH does not specify the "existing statutory remedy," or remedies it argues would preclude Plaintiff's tort in this matter. *Id.* In response, Plaintiff cites no case law opposing this portion of SCDMH's argument, claiming generally that pleading in the alternative "is a valid method of pleading." Pl.'s Mem. 4. She seeks to continue to pursue her public-policy-based claim in the event "one of the other potential alternative remedies be dismissed or found to be unsupported after discovery[.]" *Id.* Plaintiff does not support her argument with any legal authority, and the undersigned notes that such an argument runs counter to case law finding to the contrary in the context of the South Carolina tort of public-policy-based wrongful discharge. *E.g. Newman v. S.C. Dep't of Employment & Workforce*, No. CA 3:10-942-CMC-PJG, 2010 WL 4666360, at *3-4 (D.S.C. Nov. 18, 2010) (finding when statutory remedies exist, that the "available remedies under [such statutes] may be limited and that the [statutes] may impose procedural hurdles to recovery" do not change the general law that a common law claim for a public-policy-based wrongful termination is available only when there is no corresponding statutory retaliation claim). In any event, as discussed above, Plaintiff's wrongful-termination claim cannot survive SCDMH's Rule 12(b)(6) challenge.[3]

IV.     Conclusion and Recommendation

For the reasons set forth above, the undersigned recommends Defendants' Motion for Partial Dismissal, ECF No. 13, be *granted*. If this Report and Recommendation is accepted, only Plaintiff's

---

[3] For the first time in Reply, SCDMH argues the South Carolina Whistleblower Act offers Plaintiff an alternative remedy for her SCPWA-based retaliation claim. Reply 6-7. Plaintiff has not had the opportunity to respond to this portion of SCDMH's argument. Further, the court notes that the *Barron* court found it appropriate to consider the relative merits of the public-policy claim, noting the SCPWA did not include a statutory remedy for wrongful termination damages. 713 S.E.2d at 638. *Barron* did not look to other statutes (such as the already existing Whistleblower Act) in considering whether statutory remedies potentially existed.

Title VII causes of action will proceed against SCDMH only, and Defendant Magill will be dismissed.[4]

    IT IS SO RECOMMENDED.

July 6, 2016                                                    Kaymani D. West
Florence, South Carolina                      United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

---

[4] The undersigned acknowledges Plaintiff's closing sentence in which she requests leave to amend her Complaint should it be found insufficient to "substantiate a plausible legal claim[.]" Compl. at p. 5. Such requests are to be made under Rule 15(b)(2). Plaintiff has submitted no such motion, nor has she proffered a proposed amended complaint.