IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Claire M. Mensack,<br><br>        Plaintiff,<br>    v.<br><br>South Carolina Department of Mental Health and John H. Magill,<br><br>        Defendants. | C/A. No. 3:16-cv-0723-CMC-KDW<br><br><br>**Opinion and Order**<br>**Adopting Report and Recommendation**<br>**(Granting Motion for Partial Dismissal)** |

Through this action, Plaintiff Claire M. Mensack ("Mensack") seeks recovery from her former employer, Defendant South Carolina Department of Mental Health ("the Department") and the Department's Director, John H. Magill, for events surrounding and including the termination of her employment on November 19, 2014. Mensack asserts six causes of action, most of which depend on multiple legal theories, some arising under federal and some arising under state law.

The matter is before the court on Defendants' motion for partial dismissal. ECF No. 6. Specifically, Defendants seek to dismiss Mensack's claims to the extent they rely on (1) the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. § 12101 *et seq.*, (2) South Carolina Human Affairs Law ("SCHAL"), S.C. Code §§ 1-13-80, 1-13-85, (3) the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, (4) state common law theory of wrongful termination in violation of public policy ("Public Policy Discharge"), and (5) 42 U.S.C. § 1983 ("Section 1983"). *Id.* If granted in full, the motion would result in dismissal of the only claim against Magill (Fourth cause of action for violation of Section 1983) and three causes of action asserted against the Department (Third, Fifth and Sixth causes of action asserted under the ADA, SCHAL, FLSA and common law of South Carolina). It would also limit the two remaining claims

(for disparate treatment and retaliation) to reliance on Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et seq.

For the reasons set forth below, the motion is granted in full and the challenged claims are dismissed or limited as noted above. As this resolves the only claim against Magill, he is dismissed from this action. The matter is referred to the Magistrate Judge for further proceedings on the remaining claims against the Department.

## BACKGROUND

In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 (B)(2), D.S.C., this matter was referred to United States Magistrate Judge Kaymani D. West for pre-trial proceedings and a Report and Recommendation ("Report"). On July 6, 2016, the Magistrate Judge issued a Report recommending Defendants' motion for partial dismissal be granted as to all challenged claims. ECF No. 22.

The Magistrate Judge advised the parties of the procedures and requirements for filing objections to the Report and the serious consequences if they failed to do so. Mensack filed objections on July 26, 2016. ECF No. 24. Defendants filed a response on August 12, 2016. ECF No. 27. The matter is now ripe for resolution.

## STANDARD

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261 (1976). The court is charged with making a de novo determination of any portion of the Report to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1). In the

absence of an objection, the court reviews only for clear error. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'") (quoting Fed. R. Civ. P. 72 advisory committee's note)).

## DISCUSSION

For reasons explained below, the court adopts both the reasoning and recommendation of the Report. Defendants' motion for partial dismissal is, therefore, granted.

## I.    ADA and SCHAL-based Claims

The Report recommends Mensack's claims be dismissed to the extent they rely on either the ADA or SCHAL. ECF No. 22 at 5-7, 11-13. This would dispose of the Third cause of action in full and limit the First and Second causes of action to reliance on Title VII.

Plaintiff does not address these recommendations in her objections. The court has, therefore, reviewed the Report for plain error as to these recommendations. Finding none, the court adopts the reasoning and recommendations of the Report and dismisses the First and Second causes of action to the extent they rely on SCHAL and the Third cause of action, which relies on SCHAL and the ADA, in full.

## II.    FLSA-based Claims

The report recommends the Fifth and Sixth causes of action be dismissed to the extent they rely on the FLSA because the Department is entitled to Eleventh Amendment or sovereign

immunity.[1]  Mensack objects, relying primarily on *Lapides v. Bd of Regents*, 535 U.S. 613 (2002).

*See* ECF No. 24 at 2-3.  While *Lapides* stands for the proposition a state may waive Eleventh

Amendment immunity by removing an action to federal court, that waiver does not preclude a state

from relying on sovereign immunity if the state remains immune from suit for the same claim in

its own courts.  *See Lapides.* 535 U.S. at 617; *Stewart v. North Carolina*, 393 F.3d 484 (4th Cir.

2005).[2]

---

[1]  The Complaint pleads alternative claims for FLSA retaliation and Public Policy Discharge under a single heading for "Fifth and Sixth Causes of Action."  Compl. ¶¶ 45-51.  There is no indication which theory applies to which cause of action.

     Mensack incorporates earlier factual allegations "where consistent" with these causes of action and includes the following specific allegations. Compl. ¶ 45.  On or about October 24, 2014, Mensack asked her supervisor about a Suicide Prevention Walk scheduled for Sunday, October 26, 2014.  Complaint ¶ 47. The supervisor responded that "they would not be attending the event but . . . [Mensack] could come into work for a couple hours on Sunday." *Id.*  When Mensack inquired whether she would receive compensatory time if she came into work on Sunday, her supervisor stated Mensack "could not use compensatory time and furthermore that she owed the state 2.5 hours per week since she worked 37.5 hours instead of 40 hours each week and that [the supervisor] would have to think about how [Mensack] would make that up." *Id.*  Mensack was shocked by this response as she understood her regular work week to consist of 37.5 hours and she did not work on weekends. *Id.* ¶ 48.  Mensack alleges her supervisor, thereafter, "began harassing [her] and making conflicting and unreasonable demands" and, ultimately, terminated Mensack less than a month after this discussion. *Id. ¶* 49 (characterizing discussion as a "complaint regarding compensatory time").

     Mensack suggests a somewhat different set of facts in her objection memorandum by arguing she "*was being required to work overtime* and should be paid compensatory time." ECF No. 24 at 3 (emphasis added).  The Complaint, in contrast, refers only to a single inquiry regarding whether compensatory time would be available *if* she came into work voluntarily on the weekend. It does not allege actual uncompensated work.

[2]  The parties do not distinguish between sovereign immunity and Eleventh Amendment immunity. As explained in *Stewart*, the Eleventh Amendment, though often used as a shorthand for a state's sovereign immunity, is in fact narrower.  *Stewart*, 393 F.3d at 490 n.5 ("by 'sovereign immunity' we are referring to the longstanding principle of state sovereign immunity implicit in constitutional order, not the more narrow principle of Eleventh Amendment immunity"); *id.* at 89 (noting *Lapides* "does not resolve whether a state that has not consented to suit in its own courts maintains either the broader concept of sovereign immunity or Eleventh Amendment immunity upon

Mensack argues immunity does not apply because the state "expressly waived [its] Eleventh Amendment immunity for FLSA claims related to compensatory time" through the following statutory language:

> Section 8-11-55.  Compensatory time for working overtime.
>
> Any state employee who is required to work overtime during any particular week may, as a result, be given compensatory time by his agency.  *Compensatory time, if granted, must be in accordance with the Federal Fair Labor Standards Act of 1938 as amended*.

S.C. Code Ann. § 8-11-55 (1986) (emphasis added).

There are two difficulties with this argument.  First, it is not mentioned or even alluded to in Plaintiff's memorandum in opposition to the motion to dismiss.  Thus, the argument was not timely raised.  Even if timely, the argument fails on the merits because the statutory language does not address retaliation, which is the essence of the claim alleged.  *E.g.* Complaint ¶ 46 (alleging Mensack was terminated "for raising concerns regarding compensatory time"); *id.* ¶ 50 ("Plaintiff engaged in protected activity by complaining about the compensatory time and was harassed and terminated in retaliation for the complaint shortly thereafter, which constitutes a violation of the anti-retaliation provision of the FLSA.").

At most, the quoted section suggests waiver of sovereign and Eleventh Amendment immunity relating to claims for compensatory time.  An equally if not more plausible interpretation

---

voluntarily removing a case to federal court").  Sovereign immunity may, therefore, apply despite a State's voluntary removal of an action if the state has not consented to suit on the same claim in state-court proceedings.  *Id.* (noting "Eleventh Amendment immunity is but an example of state sovereign immunity as it applies to suits filed in federal court against unconsenting states by citizens of other states.")  *See also Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267–68 (1997) (discussing "the broader concept of immunity, implicit in the Constitution, which we have regarded the Eleventh Amendment as evidencing and exemplifying").

is the quoted section incorporates federal standards for awarding compensatory time without waiving immunity.  The court need not determine which of these interpretations (or some other interpretation) is correct as this section says nothing about retaliation claims and, consequently, is not an express waiver of immunity as to such a claim.  *See generally College Sav. Bank v. Fla. Prepaid Postsecondary Educ Expense Bd.*, 527 U.S. 666, 675 (1999) (noting courts apply a "stringent" test in determining waiver of Eleventh Amendment immunity "to be certain that the State in fact consents to suit"); *Edelman v. Jordan*, 415 U.S. 651, 673 (1974) (holding waiver of Eleventh Amendment immunity must be "stated by the most express language or by such overwhelming implications . . . as [will] leave no room for any other reasonable construction.").

The court, therefore, adopts the Report as supplemented above and dismisses the Fifth and Sixth causes of action to the extent they rely on the FLSA.

### III.     Public Policy Discharge-based Claims

As indicated above, Mensack's Public Policy Discharge theory is pleaded in the alternative to the FLSA retaliation theory under her Fifth and Sixth causes of action.  It, therefore, rests on the same factual allegations that Mensack suffered adverse treatment after she inquired about the availability of compensatory time for Sunday work.

In her objections, Mensack argues her termination was a violation of a clear mandate of public policy as expressed in S.C. Code Ann. § 8-11-15(A), which states "[t]he *minimum* full-time workweek for employees of state agencies and institutions is thirty-seven and one-half hours." S.C. Code Ann. § 8-11-15(A) (emphasis added).  She also relies on S.C. Code Ann. § 8-11-55, quoted above, which provides that an employee required to work overtime may be given

compensatory time.  ECF No. 24 at 3.  Mensack did not mention either section in her complaint or memorandum in opposition to dismissal.[3]

Even if relied on in the Complaint or in her memorandum in opposition to dismissal, Section 8-11-15(A) would not support Mensack's argument because it, at most, establishes a *minimum* number of hours for what constitutes full-time employment.  It does not address the threshold for overtime or compensatory time.  Likewise, Section 8-11-55 would not support Mensack's argument because it merely authorizes compensatory time if an employee works overtime, without addressing the threshold number of hours.  In any event, neither section addresses retaliation.  Thus, neither section provides a basis for a Public Policy Discharge Claim. *See generally Taghivand v. Rite Aid Corp.*, 768 S.E.2d 385 (S.C. 2015).

Mensack also argues her termination was in violation of a clear mandate of public policy that employees be granted up to two hours of leave to vote.  This argument is misplaced because neither Mensack's request for voting leave nor the statute on which she now relies are mentioned under the combined Fifth and Sixth causes of action.[4]  She has, in any event, failed to direct the

---

[3]  Mensack's Complaint relies on the South Carolina Payment of Wages Act, S.C. Code Ann. § 41-10-10 *et seq.* ("SCPWA"), which Mensack asserts "requires employers to compensate employees for any wages owed including compensatory time, thus [Mensack's] termination for complaining of [not] being paid for time worked is a violation of the public policy of South Carolina[.]"  Complaint ¶ 51.  As noted above, the Complaint does not allege Mensack actually worked on the weekend and requested but was denied compensatory time for the additional hours, only that she received an unfavorable response when she inquired about the availability of compensatory time if she worked on a Sunday.  Mensack's memorandum in opposition to dismissal, likewise, relies on allegations she suffered retaliation after complaining "about not getting paid with compensatory time or otherwise compensated as she was promised which is a violation of the SCPWA."  ECF No. 12 at 4.

[4]  Mensack refers to denial of voting leave on November 4, 2014, in her general factual allegations and relies on this denial as an act of disparate treatment on the basis of race or disability or related

court to any clear expression of public policy that would support a claim for retaliation based on an employee's questioning denial of leave to vote.[5]

In sum, the court finds no merit in Mensack's various objections or arguments relating to her Fifth and Sixth causes of action, specifically to the extent either attempts to allege a Public Policy Discharge claim. The court, therefore, adopts the reasoning and recommendation of the Report as supplemented above and dismisses the Fifth and Sixth causes of action to the extent they rely on a state law theory of Public Policy Discharge.

## IV.     Section 1983 and Leave to Amend

Mensack's only reference to her Section 1983 claim is found under her third argument, which seeks "leave to amend the Pleadings to clarify the Section 1983 claim and the alternative claims of FLSA retaliation and public policy discharge." Thus, Mensack does not object to dismissal of the Section 1983 claim as currently pleaded. Neither does she propose any specific amendment to any of these causes of action that might cure the deficiencies noted in the Report or here.[6] Under these circumstances, the court adopts the recommended dismissal of the Section 1983 claim and denies the request to amend. The court does not, however, preclude Mensack from

retaliation under her First through Third causes of action. *Id.* ¶¶ 13, 21, 22, 24, 36. She does not mention her request for voting leave under her Fifth and Sixth causes of action, which, despite incorporating "paragraphs 1-22 where consistent herewith[,]" rely on distinct factual allegations relating to her compensatory time inquiry. *Id.* ¶¶ 45-51.

[5] As Defendants note in their response to Mensack's objections, the statute provides voting leave only under limited circumstances.

[6] To the extent Mensack's objection memorandum suggests either new allegations or legal bases for these claims, the new allegations and legal bases would not cure the deficiencies for reasons addressed above.

8

filing a properly supported motion to amend.  Neither does the court address whether such a motion would be timely if filed.

## CONCLUSION

For reasons set forth above, the court adopts the recommendations and rationale of the Report as supplemented above, dismisses the Third through Sixth causes of action in full, and limits the First and Second causes of action to reliance on Title VII.  The matter is referred to the Magistrate Judge for further pretrial proceedings.

IT IS SO ORDERED.

s/ Cameron McGowan Currie<br>
CAMERON MCGOWAN CURRIE<br>
Senior United States District Judge

Columbia, South Carolina
August 17, 2016